# The East St. Louis Connecting Railway Company

## v.

## James O'Hara.

### Filed at Mt. Vernon June 19, 1894.

1. Negligence—*wanton and willful negligence—ill-will immaterial.* If the servants of a railway company, at the time a plaintiff was injured, were running its engine in the dark, without a headlight, or a bell ringing, and at a high and dangerous rate of speed, and where many persons were likely to be passing, such acts will be liable to the construction of being in wanton and willful disregard of the rights and safety of the public generally, so as to amount, in law, to wanton and willful negligence; and it will not be necessary, in order to raise such an inference, to prove that the defendant's servants were actuated by ill-will directed specifically to the plaintiff, or to have known that he was in such a position as to be likely to be injured.

2. Same—*a question of fact for the jury.* An instruction, in an action by the plaintiff against a railroad company, which makes the mere fact that the plaintiff, at the time he was injured, was lying upon the defendant's track outside of the limits of the street, proof of negligence *per se,* so as to constitute, in law, a conclusive bar to his recovery, is clearly erroneous.

3. While the plaintiff's lying upon the railroad track would, unexplained, be very cogent evidence of negligence, the question would, after all, be a question of fact for the jury, since his being in that position may have resulted from various supposable causes not inconsistent with the exercise of reasonable care on his part.

4. Ordinance construed—*speed of trains—"cars" includes locomotive engines.* An ordinance of a city providing that no railroad company shall run any passenger train or cars within the city limits at a greater rate of speed than ten miles an hour, nor any freight train or car at a greater rate of speed than six miles an hour, is broad enough to include any and all vehicles on wheels, and embraces locomotive engines, which are a species of "cars."

5. Witnesses—*impeaching party's own witness.* While a party, after putting a witness upon the stand, is not at liberty to introduce evidence tending directly to impeach him, he may show that his evidence given for the other party is in fact untrue, although his so doing may constitute an indirect impeachment.

6. Practice—*remarks of counsel to the jury.* On the trial of a case, a witness who had testified for the plaintiff was afterward put upon the

stand by the defendant, when he gave evidence damaging to the plaintiff, and much of his testimony given for the defendant was disputed by other evidence. The plaintiff's counsel, in his closing address to the jury, said that the witness had committed perjury, and had been bribed : *Held*, no error in the court's refusal to direct the counsel to refrain from such remarks, and that counsel, in his argument, might draw any proper and legitimate inferences arising from all the evidence in the case.

7. INSTRUCTIONS—*when refusal is not error—finding against the facts supposed.* On the trial of an action against a railway company for a personal injury, the court refused to instruct the jury, "that although they may believe, from the evidence, that defendant's servants were, in fact, guilty of some or all the acts of negligence charged in the declaration, yet if they further believe, from the evidence, that plaintiff, at the time he was injured, was lying upon defendant's track outside the limits of a street, he can not recover," etc. The jury specially found that the plaintiff, when injured, was not lying upon the track of defendant's road, and also that the place where he was injured was not outside of the limits of the street: *Held*, that in view of such finding the refusal of the instruction could not have injured the defendant.

8. SAME—*referring to the ad damnum.* Although the reference in an instruction to the amount in the *ad damnum* in the declaration is not to be commended, it will not constitute such error as to call for a reversal of the judgment, especially when the damages found are not unreasonable or exorbitant, and are made less than those sued for.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. A. S. WILDERMAN, Judge, presiding.

Mr. CHARLES W. THOMAS, for the plaintiff in error.

Mr. JESSE M. FREELS, and Mr. VIRGIL RULE, for the defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action on the case, brought by James O'Hara against the East St. Louis Connecting Railway Company, to recover damages for a personal injury. The defendant owns and operates a double track connecting railway in the City

of East St. Louis, used for transferring cars to and from the numerous railways which have their termini there. This railway runs north and south, nearly parallel with the easterly bank of the Mississippi river, the wharves and landing of the Wiggins Ferry Company being between it and the river.

Front street in East St. Louis, runs north and south and along the east side of these wharves, and there is a conflict in the evidence as to whether the tracks of the railway in question are on or immediately west of that street. The plaintiff's contention is, that the tracks are on the westerly part of the street, while the defendant claims that the westerly track, the one upon which the plaintiff received his injury, is at no point upon the street. The evidence tends to show, however, that whether the westerly track is on the street or not, the tracks are not enclosed or separated from the street on the one hand, or the wharves of the Ferry Company on the other, but are so connected with the public street as to be apparently a part of it, and that the public have been in the habit, for many years, of crossing over the track at that place, in going from Front street to the landing of the Ferry Company.

The evidence tends to show that on the 23d day of October, 1889, in the evening, after dark, the plaintiff who was in the employ of the St. Louis Transfer Company as a teamster, after having put away his team in the barns of that company which were located east of Front street, started in a direct line across Front street and the tracks of the defendant to the ferry landing, and that as he was crossing the westerly track, he was struck by one of the defendant's engines backing up from the south, and was so injured as to require the amputation of his right arm. The plaintiff testifies that before going on the track he looked in both directions and saw no engine approaching and no light.

It is charged in the declaration, and the evidence tends to show, that at the time the plaintiff was injured, the engine was being run without a headlight, and with no bell ringing,

and that it was running at a dangerous and unlawful rate of speed. In the second or additional count it is alleged that these acts of negligence were wanton and willful, and that the engine was being run at a rate of speed prohibited by an ordinance of the city of East St. Louis. The defendant pleaded not guilty, and at the trial, the jury found the defendant guilty, and assessed the plaintiff's damages at $5000. The court, at the instance of the defendant, also submitted to the jury several questions of fact to be found specially, and the jury thereupon found, (1) that the headlight on the locomotive which struck the plaintiff was not burning at the time of the accident; (2) that the bell of the locomotive was not ringing at the time of the accident; (3) that the plaintiff was not lying upon the defendant's track just before he was injured; (4) that the servants and agents of the defendant injured the plaintiff willfully and on purpose, and (5) that the place where the plaintiff was injured was in a public street.

The court, after denying the defendant's motion for a new trial, gave judgment in favor of the plaintiff for the amount of damages found by the jury and costs. On appeal to the Appellate Court that judgment was affirmed and the defendant now brings the record to this court, by writ of error, and assigns for error the judgment of the Appellate Court.

The facts being conclusively settled in favor of the plaintiff, the only errors submitted for our consideration, are those which call in question the rulings of the court in the instructions to the jury, in the admission of evidence and in failing or declining to restrain the plaintiff's counsel from indulging in certain remarks in his closing address to the jury.

Complaint is made of the first and only instruction given to the jury at the instance of the plaintiff. This instruction was as follows:

"The court instructs the jury, that if they believe and find, from the evidence, that the plaintiff, prior and at the time of receiving the injury complained of, was using due and ordi-

nary care for his personal safety and to avoid and prevent his injury, and without notice of approaching danger, that the defendant was then and there guilty of negligence as charged in the additional count of the declaration, and that the plaintiff, in consequence thereof, was, without his fault, then and there injured, as alleged in said additional count, then they will find for the plaintiff, and assess his damages at such sum as they believe, from the evidence, to be just compensation for the injuries so sustained, not, however, to exceed $10,000,— the amount sued for."

It is contended in the first place that it was error for the court by the instruction, to call the attention of the jury to the amount sued for, and instructing them that the damages awarded by their verdict in case they found for the plaintiff, should not exceed that sum. Although such reference to the amount of the *ad damnum* in the declaration is not to be commended, still, we do not think that it constituted such error as calls for a reversal of the judgment. That the amount of the *ad damnum* was the maximum beyond which the jury could not go is unquestionably a correct legal proposition, and we can not suppose that any jury of ordinary intelligence would regard such reference alone as any intimation by the court that the damages to be assessed should reach or approximate that sum. As the jury in fact assessed the plaintiff's damages at only $5000, a sum which, in view of all the evidence, can not be regarded as unreasonable or exorbitant, we do not think the jury could have been misled or unduly influenced by the instruction.

In the next place it is insisted that the instruction ignored the defense, that the plaintiff at the time he was injured, was on the private right of way of the defendant, and proceeds upon the theory that the question of the precise place where where the injury occurred, whether on the defendant's right of way or on the street, is a matter of no consequence. Whether the instruction is subject to this criticism or not, it

is sufficient to say that the evidence as to whether the track where the plaintiff was injured was in the street or not, was conflicting, and the jury at the instance of the defendant, found specially that it was in the street. That fact being thus settled adversely to the defendant, it is not important that the instruction ignored a defense based upon a hypothesis which the jury expressly found was not proved.

It is also contended that, as the instruction is based upon the charge of negligence contained in the second or additional count of the declaration, there was no evidence before the jury tending to support it. In that count the several acts of negligence charged are alleged to have been committed wantonly and willfully and it is claimed that there is no evidence tending to prove wanton or willful misconduct. If it be true, as the evidence tends to show, that the defendant's servants, at the time the plaintiff was injured, were running their engine in the dark, without a headlight, or a bell ringing, and at a high and dangerous rate of speed, along a much frequented street, and where many persons were likely to be passing on their way to the ferry landing or otherwise, such acts would be liable to the construction of being in wanton and willful disregard of the rights and safety of the public generally, so as to amount in law, to wanton and willful negligence. And it was not necessary, in order to raise an inference of such negligence, to prove that the defendant's servants were actuated by ill-will directed specifically towards the plaintiff, or to have known that he was in such position as to be likely to be injured.

Error is assigned upon the refusal of the court to give the following instruction asked on behalf of the defendant:

"The court instructs the jury, that although they may believe, from the evidence, that defendant's servants were, in fact, guilty of some or all the acts of negligence charged in the declaration, yet if they further believe, from the evidence, that plaintiff, at the time he was injured, was lying upon

defendant's track outside the limits of a street, he can not recover in this case."

This instruction makes the mere fact, (if it were a fact,) that the plaintiff at the time he was injured, was lying upon the defendant's track outside of the limits of the street, proof of negligence *per se*, so as to constitute in law a conclusive bar to his recovery. While his being found lying upon the track would, unexplained, be very cogent evidence of negligence, the question would, after all, be a question of fact for the jury, since his being found in that position may have resulted from various supposable causes not inconsistent with the exercise of reasonable care on his part. The instruction, as asked, therefore, was clearly erroneous.

But there is another reason why the refusal of this instruction can not be regarded as prejudicial to the defendant. The jury specially found that the plaintiff, at the time he was injured, was not lying upon the track of the defendant's road, and also that the place where he was injured was not outside of the limits of the street. The hypothesis of the instruction then being one which the special findings of the jury have expressly negatived, no benefit could have resulted from giving such instruction, as it manifestly could have had no influence upon the verdict.

The next contention is that the court erred in permitting a section of an ordinance of East St. Louis to be read in evidence to the jury which provides, that, no railroad company shall run any passenger train or cars or permit the same to be run within the limits of the city at a greater rate of speed than ten miles an hour, nor any freight train or car at a greater rate of speed than six miles an hour, under the penalty of not less than $25 nor more than $100. The point made is that this ordinance has no application to locomotive engines when running alone, and forming no part of a train of cars. We are not disposed to adopt that construction of the ordinance. The purpose of the ordinance was to prevent

injury to persons and property from the running of trains and cars at too high a rate of speed within the city, and locomotive engines come clearly within the reason and purpose of the ordinance, as much when running alone as when attached to and propelling a train of cars. Besides the term "cars" in its proper signification includes many, if not all classes of vehicles on wheels, and we see no reason why, in its proper generic sense it may not be held to embrace locomotive engines as a species of cars. We, therefore, think there was no error in the admission of the ordinance in evidence.

The last point to be noticed relates to the ruling of the court in relation to the conduct of plaintiff's counsel, in his closing address to the jury. The bill of exceptions recites that in his closing address, "the counsel for the plaintiff said in substance that the witness Fries had committed perjury and had been bribed, and the defendant moved the court to direct said counsel to refrain from any such comments upon said Fries, but the court made no ruling on said motion, and the said counsel then proceeded and repeated such remarks to the jury, and to this action of the court, the defendant at the time excepted."

Fries had been called as a witness by the plaintiff and had testified in his behalf and was afterward put upon the stand by the defendant, when he gave evidence damaging to the plaintiff. Much of his testimony given for the defendant was disputed by other evidence, in the case. While the plaintiff, after putting him upon the stand as his own witness was not at liberty to introduce evidence tending directly to impeach him, he was at liberty to show that his evidence, given for the defendant was in fact untrue, although his so doing might constitute an indirect impeachment. And we see no reason why counsel in his argument was not at liberty to draw any proper and legitimate inferences arising from all the evidence in the case. We can not say, therefore, that the action of

the court in neglecting or declining to restrain remarks of counsel, was erroneous.

After giving the record careful consideration, we are able to find no material error, and the judgment of the Appellate Court will, therefore, be affirmed.

*Judgment affirmed.*

Mr. JUSTICE PHILLIPS, having heard this case in the Appellate Court, took no part in the decision of this case in this court.