## Peter J. O'Conner, by His Next Friend, etc., v. Illinois Central Railroad Co.

1. TRESPASSER—*On Railroad Grounds, May Recover, When.*—A trespasser, although negligent in going on defendant's tracks, may still recover, if the acts of defendant's servants, under all the circumstances shown, may be said to have been willful or wanton.

2. PERSONAL INJURIES—*Evidence of Use of Tracks by Pedestrians— When Competent.*—In an action by a boy for personal injuries received while trespassing upon the tracks of a railroad company, it is competent to show that great crowds of people, with the company's knowledge, were accustomed to cross the tracks each day, at about the time of the accident; and is proper to be considered by the jury in determining, as a matter of fact, whether the acts of the company's servants, in running its trains without a light along the tracks at such a place, known to them

to be constantly used by crowds of people at the particular time of the evening when the injuries were received, were not so reckless and grossly negligent as to be denominated willful and wanton.

**Trespass on the Case,** for personal injuries.    Trial in the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding.    Verdict for defendant · by direction of the court.    Error by plaintiff.    Heard in this court at the March term, 1898.    Reversed and remanded.    Opinion filed July 21, 1898.

## STATEMENT OF FACTS.

This writ of error is to reverse a judgment of the Circuit Court of Cook County entered upon a verdict, directed by the trial judge at the conclusion of all the evidence, in an action on the case to recover for personal injuries.

The plaintiff, a boy thirteen years and eleven months of age, while attempting to cross the defendant's tracks—with which he was entirely familiar and knew that trains were passing thereon day and night frequently, and might be expected at any time at 25th street—on the night of June 1, 1895, was run over by a train and his right arm so injured that it became necessary to amputate it at the shoulder.

The defendant's tracks, eight or nine in number, extended along the lake shore from Lake to 51st street, a distance of about five miles.    The city of Chicago is immediately west of the tracks.    There was a stone wall part of the distance along the west line of the defendant's right of way, and no public crossings over the tracks between Lake and 51st streets.    There was a private crossing for dump carts and wagons at 27th street.    There were also viaducts about four feet wide which crossed the tracks, one at 22d street and one at 29th street, but they were private ways and so marked.    With these viaducts and crossing and their use plaintiff was familiar.

Twenty-fifth street was a street running east and west in the city of Chicago, and ended at this wall along defendant's' right of way.    For about two years prior to the accident there were wooden steps leading from 25th street to the top of the wall, which was about three or four feet above the street, and next to the tracks about six feet, and there were

coupling pins driven in the masonry by which a person could descend from the top of the wall to the tracks. Commencing immediately north of 25th street, and extending all along to the north, and commencing south of 25th street below defendant's shops, and extending southward, there was an iron picket fence on top of this wall. There was nothing on top of the wall at 25th street. On the night of the accident the plaintiff and seven boys, nearly all of whom were older than the plaintiff, left their homes, in the vicinity of Canal and 25th streets, to go to the lake. They descended on the coupling pins to the ground, crossed the tracks to the lake and went in swimming. They were recrossing the tracks on their return at about half-past eight when the accident happened. There was a line of cars standing on one of the east tracks, which extended both north and south of 25th street, with an opening between the cars at 25th street. The point where the boys went in swimming was a little south of 25th street. From this point they walked north along the cars to 25th street and started to recross the tracks on a line with 25th street to the coupling pins and steps, by means of which they were to recross the wall. The plaintiff was a few feet ahead of the other boys. After passing the cars he and some of the other boys testified that they looked both north and south and saw no train approaching. It is a fair inference from the evidence that if plaintiff had looked he could have seen the approaching car. The plaintiff had crossed to about the first or second track from the standing cars when he was run over by a train being pushed north, and sustained the injuries complained of.

The evidence showed the train to have been about seven to ten cars in length, with the engine upon the south end. The first three cars to the north were coal cars. There were then some box cars and other coal cars closer to the engine.

The plaintiff and one of his witnesses testified that they did not see any light on the forward or north end of this train, and they received no warning of any kind of its approach. Two of plaintiff's witnesses testified there was

O'Conner v. I. C. R. R. Co.

no light on the forward end of the train, but one of them, on cross-examination, said he could not tell whether there was a light or not. Two witnesses, switchmen on the train of the defendant, testified positively that there was a conspicuous red light on the north end of the car which struck plaintiff, and that it was burning before the accident and immediately after. The trainmen said the train was running about six or seven miles an hour.

A city ordinance was introduced in evidence which required such train to have a brilliant and conspicuous light on the forward end when being backed along the track.

Plaintiff offered to show that great crowds of people were in the habit of crossing and recrossing these tracks at this place between 7 and 9 o'clock of summer evenings for years prior to the accident; and offered to show by a trainman on the train in question that he knew of such use. He also offered to show that there were great crowds of people passing up and down the lake shore immediately east of the tracks. The court ruled this testimony out, to which ruling the plaintiff excepted. There was no fence or obstruction of any kind between the tracks and the lake shore. It did appear in evidence, however, that there were perhaps two hundred persons in swimming at the place where the plaintiff was swimming on the night of the accident.

JAMES C. McSHANE, attorney for plaintiff in error.

JOHN G. DRENNAN, attorney for defendant in error; C. V. GWIN, of counsel.

MR. PRESIDING JUSTICE WINDES, after making the foregoing statement, delivered the opinion of the court.

The plaintiff's counsel claims that the defendant is liable because its servants knew or were chargeable with a knowledge that great numbers of people were in the habit of crossing defendant's tracks at the place where the accident occurred at all times of day and night, and particularly between 7 and 9 P. M., between which hours plaintiff was

injured; that defendant did not object to such use, but acquiesced in it, and that to back its train across this passageway in the night time, at the rate of six miles per hour, without a light on the rear end thereof, in violation of the city ordinance (as the evidence tended to prove), in view of these facts, showed such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness. He also claims that defendant was negligent in not maintaining a proper barrier or obstruction on the stone wall separating its tracks from 25th street; that plaintiff, by reason of his youth, was attracted to the lake for the purpose of bathing, crossed defendant's tracks to the lake, and when returning across the tracks, in the exercise of ordinary care and caution for one of his years, was injured by the carelessness and negligence of defendant's servants, for which defendant is liable.

The latter contention we think is not tenable, nor do we understand that plaintiff's counsel seriously contends for this position. We therefore dismiss it without discussion, and proceed to the consideration of what, to us, seems the vital question of the case. Under the facts in this record, and in addition assuming that plaintiff could prove what he offered to show, there can be no recovery unless it may be said these facts show "such a gross want of care and regard for the rights of others as to justify the presumption of willfulness or wantonness" on the part of defendant's servants.

If plaintiff was a trespasser (and we think that is established by the evidence) and was negligent in going on defendant's tracks, still he may recover if the acts of defendant's servants, under all the circumstances shown, may be said to have been willful or wanton. . The ordinance of the city of Chicago introduced and read in evidence required that every railroad car or train of cars running in the night time on any railroad track in the city, should have and keep while so running a brilliant and conspicuous light on the forward end of the car or train of cars, and if the train be backing, as was the case in this instance, it should have a conspicuous light on the rear car, so as to show the direction said car was moving.

O'Conner v. I. C. R. R. Co.

As to whether there was such a light on the rear car of the train in question there was a conflict in the evidence, the plaintiff and one of his witnesses testifying to a state of circumstances tending strongly to show that had there been such a light they could have seen it, but they said they did not see a light. Two other witnesses for plaintiff testified that there was no light, but one of them admitted, on cross-examination, that he did not know whether there was a light or not. Two witnesses for the defendant, switchmen of the train (one of whom was charged with the duty of placing a light on the rear car), testified that there was a conspicuous red light on the end of the rear car; that they examined it immediately after the accident, and that it was then burning.

If there was no light on the rear of this car as it was backed to the north, then we think it became material to consider, in that connection, the evidence which was offered by plaintiff and excluded by the court, to the effect " that the defendant's tracks opposite 25th street were constantly used by great crowds of people, especially between the hours of seven and nine o'clock in the evening, in going back and forth between 25th street and the lake, and also that there were thousands of people between those hours constantly passing up and down the lake shore immediately east of defendant's tracks at this point," and that defendant's servants knew these facts, in order to determine, as a matter of fact, whether the acts of defendant's servants in so running its train without a light along the tracks, across a place known to them to be constantly used by great crowds of people at that particular time of the evening, were not so reckless and grossly negligent as to be denominated willful and wanton. It will be conceded that had defendant's servants seen the boy in time to have avoided injuring him by the exercise of ordinary care on their part, the defendant would be liable although the boy was a trespasser, because the servant's acts would then be held to be willful and wanton. We think this state of fact can not, as matter of law, be different, so far as concerns defendant's liability to

plaintiff, than it would be were the jury to believe from the evidence produced and offered that the acts of defendant's servants, under the circumstances shown, amounted to willfulness and wantonness on their part. The question, in our opinion, was one of fact for the determination of the jury, and the court erred in excluding the proffered evidence by the plaintiff, and with such evidence before the jury, it would be the duty of the trial court to submit the case to their verdict in the first instance.

It is unnecessary to review the numerous cases cited by counsel on both sides, and is sufficient to refer to only three.

In the case of Ry. Co. v. Bodemer, 139 Ill. 596, a boy nine years of age was killed while crossing the railway tracks at a place not a street crossing, but between two streets that were much frequented by men and teams, and where there was a roadway on each side of the tracks which were claimed to be on the private right of way of the railway company, just after the last car of a long and noisy freight train had passed, by the engine of a passenger train going in the opposite direction at great speed. It was contended that, as deceased was a trespasser upon the railroad's right of way, there was no liability. The court said: "It has been held that when a trespasser upon the tracks of a railroad company is injured, the company is not liable, unless the injury was wantonly or willfully inflicted, or was the result of such gross negligence as evidences willfulness." After reciting the facts in detail, from which it fails to appear that defendant's servants saw the boy in time to avoid the accident, the court further said: "We are unable to say that there was not evidence enough to justify the court in leaving it to the jury to say whether or not the boy was killed by the wanton and willful negligence of the company. * * * The jury were authorized to look at the conduct of the engineer in the light of all the facts in the case. It has been said: 'What degree of negligence the law considers equivalent to a willful or wanton act is as hard to define as negligence itself, and in the nature of things, is so dependent upon the particular circumstances of

each case as not to be susceptible of general statement.'"
And after quotations from numerous authorities, in speak-
ing of the negligence, the court further said :    "Let these
principles be applied to the case at bar.    The train which
committed the injury was traveling at the unusual speed of
thirty-five or forty miles an hour, in the crowded city of
Chicago, over street crossings;   upon unguarded tracks so
connected with a public street and  so apparently the con-
tinuation of a public street as to be regarded by ordinary
citizens as located in a public street; along a portion of such
tracks where persons were known to be passing and crossing
every day; in conceded violation of a city ordinance as to
speed; and without warning of the approach of the train
by the ringing of a bell.   This conduct tended to show such
a gross want of care and regard for the rights of others as
to justify the presumption of willfulness.   It also tended to
show that if there was failure to discover the danger of
deceased, such failure was owing to the recklessness of the
company's servants in the management of its train."    The
court also held that the trial court did not err in admitting
evidence of the passing of persons across the track, because
at the time the evidence was admitted the proof tended to
show that the tracks were in a public street, or what was
called and regarded as a public street, and after the defend-
ant introduced its proof tending to show the ownership of
the strip of land on which the tracks were located, it did
not move to exclude the evidence as to the passing of per-
sons over the tracks, declined to further consider the ques-
tion as to whether the company was relieved from liability
for injury to such persons, and affirmed a judgment against
the defendant.

In Ry. Co. v. O'Hara, 150 Ill. 580, in which there was a
conflict in the evidence as to whether the tracks of the rail-
way were in a public street or on its private right of way,
evidence was admitted tending to show that the public had
been in the habit for many years of crossing over the track
at the place of the injury.   The second count of the declara-
tion charged that the negligence of the railway company

was wanton and willful. The report of the case does not show that there was any objection to evidence, nor that the railway company's servants knew of the plaintiff's presence on the railway tracks. In speaking of the acts of negligence in the second count, and the claim of counsel that there was no evidence tending to prove wanton or willful misconduct, the court said: "If it be true, as the evidence tends to show, that the defendant's servants, at the time the plaintiff was injured, were running their engine in the dark, without a headlight, or a bell ringing, and at a high and dangerous rate of speed, along a much frequented street, and when many persons were likely to be passing on their way to the ferry landing or otherwise, such acts would be liable to the construction of being in wanton and willful disregard of the rights and safety of the public generally, so as to amount in law to wanton and willful negligence. And it was not necessary, in order to raise an inference of such negligence, to prove that the defendant's servants were actuated by ill-will directed specifically toward the plaintiff, or to have known that he was in such position as to be likely to be injured." The judgment in favor of the plaintiff was affirmed.

In C. & A. R. R. Co. v. O'Neill, 172 Ill. 527, the injury occurred upon an open space between two streets, where several railroad tracks were laid and in use, in the immediate vicinity of which were several packing houses where large numbers of persons were daily employed. The tracks in question were not clearly shown to be owned by the Stock Yards Company of Chicago but it charged divers railroad companies, including appellant, for the use of the tracks a certain amount. Some freight cars were being switched along the tracks over and along which Mrs. O'Neill, going from her work, was walking, by appellant's engine, and one of the cars, with an open door projecting about nine inches, and without a light on it, was "kicked" down the tracks in the direction in which she was going, and apparently was not observed by her until it was within a few feet of her, when she stepped off the track next to a

platform, and by reason of the projecting door was struck and killed.  It was quite dark, and there was no brakeman on the car.  The same ordinance was offered in evidence and relied on by plaintiff as in the case at bar, though it fails to appear whether it was pleaded or not.  Some of the counts of the declaration alleged that the place of the accident was a public place, others that it was a public place open to the public, and they all alleged that the acts of the defendant set out as the cause of the killing were done negligently, recklessly, wantonly and willfully.  Evidence was offered showing that the place in question was open and was used by hundreds of pedestrians, and that the engineer knew when he "kicked" the car down the track without any brakeman or light upon it, that "swarms" of people were then passing over the tracks in every direction, but that he did not know of the accident until he was told of it. The trial court refused to take the case from the jury, and instructed, in substance, that they should not find the defendant liable unless they believed from the evidence that it was guilty of a degree of negligence so gross as to amount to a willful, reckless and wanton disregard of the rights and safety of Mrs. O'Neill;  that the negligence should be such as to justify the presumption of  willfulness or wantonness on the part of the defendant.  A verdict and judgment against the railway company was affirmed by both this and the Supreme Court, the latter court holding that it would have been an invasion of the province of the jury to instruct to find the defendant not guilty, and said that "the cases cited by appellant, where trespassers upon the right of way of the railroad company have been injured, are here only remotely in point.  *  *  *  If the jury believed from the evidence that the servants of the appellant uncoupled this car while it was running several miles an hour, and sent it down the track in question in the darkness without a light upon it and unattended by a brakeman, and at a time and place when and where, as they well knew, great numbers of people employed in the adjacent establishments were passing in all directions on their way home, their finding

that the injury was recklessly and wantonly inflicted can not, on this record, be disturbed by this court."

It will be noted that in the Bodemer and O'Hara cases there was some question as to whether the place of accident was the private right of way of the railroad company; but in the O'Neill case the allegation was that the place of the accident was "an open place," "a public place open to the public," and the proof was that the place was open and was used by hundreds of pedestrians, and that the engineer knew when he "kicked" the car down the track without a brakeman or light upon it, that "swarms" of people were then passing over the track in every direction.

In this case there was a conflict in the evidence as to there being a light on the car, which presented a question for the consideration of the jury, and that question, in connection with the evidence of there being no pickets on the stone wall at the foot of 25th street, when the pickets were on the wall both north and south of that street, also of the steps leading up from the street to the top of the wall, and the coupling pins on the opposite side of the steps, thus making a means of passage across the wall, together with the offered evidence that great crowds of people were constantly crossing the tracks at this point between 7 and 9 P. M., and that thousands were constantly passing up and down the lake shore immediately east of defendant's tracks between those hours, would have made a case for submission to the jury to determine, from all the facts and circumstances, whether defendant was guilty of negligence, and if so, whether the acts constituting such negligence were, to use the language of Judge Bailey in the O'Hara case, *supra*, "liable to the construction of being in wanton and willful disregard of the rights and safety of the public generally, so as to amount in law, to wanton and willful negligence." As to such a case we are inclined to think that reasonably fair-minded and honest men might differ in their conclusions, and if such a state of circumstances shows wanton and willful negligence, which, in the first instance, was a question for the jury, the plaintiff would not be precluded

from a recovery because he was a trespasser on defendant's tracks.

For the error in excluding the evidence mentioned and in directing a verdict for defendant, the judgment is reversed and the cause remanded.