The Elgin, Joliet and Eastern Railway Company

*v.*

James Duffy.

*Opinion filed October 24, 1901.*

1. RAILROADS—*right of teamster to attempt to save property.* A teamster having a break-down on a railroad crossing has a right to try to get his team and wagon off the track if the circumstances are such as to justify a reasonable belief that he can do so with safety.

2. SAME—*what evidence tends to show wantonness in the management of train.* Evidence that a train was going at a high rate of speed around a sharp cure, where the view was obstructed, approaching a much traveled street, giving no warning by bell or whistle, tends to establish wantonness in the management of the train.

*Elgin, Joliet and Eastern Ry. Co.* v. *Duffy,* 93 Ill. App. 463, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Second District, affirming a judgment for $5000 rendered in an action on the case brought by James Duffy against the appellant, in the circuit court of Kane county, to recover damages for the loss of his arm. The accident was occasioned by a collision of the appellant's train with the wagon of appellee at a street crossing in the city of Aurora.

The declaration contained nine counts, which, in substance, charged the appellant with negligence in not planking the entire width of the street at the crossing; in running its train at a higher rate of speed than the limit fixed by the ordinance of the city; in permitting a freight car to remain upon the crossing at or near the middle of the street, causing plaintiff to drive off of the beaten track at the crossing; in not ringing the bell or sounding the whistle at the crossing, as required by statute; in running the train at a high rate of speed at a dan-

gerous crossing; in failing to use sufficient care in coming upon the crossing, which was obscured by buildings, embankments and trees, and the approach to which was sharply curved. It is also charged that the servants of the company willfully and maliciously inflicted the injury in question.

Railroad street, where the accident occurred, at the crossing in question runs nearly north-east and south-west, and appellant's main line crosses it almost at right angles. The main line of the Chicago, Burlington and Quincy railroad runs parallel with Railroad street and about two hundred feet west of it. Connecting the main lines of the two roads is a "Y" track, which crosses Railroad street on quite a sharp curve. North of the "Y" track is what is known as the "Esser switch," which branches off from the "Y" track a short distance west of Railroad street and extends south, paralleling the "Y" and also crossing Railroad street. Where the "Y" and the Esser switch cross Railroad street they are six or eight feet apart, and are provided with plank crossings in the middle of the street, about sixteen feet wide. Appellee was engaged in hauling railroad ties from a car on the Esser switch. The ties were unloaded on the north side of the switch, and there were several cars on that track, one of them extending from two to four feet on the plank crossing. On account of an embankment north of the track it was necessary for appellee to drive close to the north side of the cars as he went to Railroad street. At the time of the accident appellee had loaded his wagon and had driven around the end of the car in the street. In going round the end of the car the turn was short and he drove off of the planking on the opposite side of the street. There is a sharp decline from the Esser track to the "Y" track, and when the wagon wheel struck the second rail of the latter track a portion of the load slipped off on the track and between the wheels in such a manner that he could not drive on. A man named Hord was with

Duffy on the load at the time and they both slipped off the ties to the ground.   Three men who were engaged in assisting to unload the ties from the cars came to appellee's assistance and started to re-place them upon the wagon.  Hord, at the request of a watchman near by and with the knowledge of Duffy, went north on the "Y" track to flag a train which was expected about that time.  When a few of the ties had been loaded the train was seen by Hord coming down the track toward the crossing.   He made signals for the purpose of stopping it, but failed, though its speed was somewhat slackened.   Sullivan, one of the men engaged in putting the ties back on the wagon, saw the train coming and at once gave the alarm to Duffy, who was on the wagon, to "jump quick." It appears he started to jump down, but the horses at that time gave a jerk which threw him upon his knees.   Before he could get off, the engine had struck the wagon, throwing him high into the air, and he landed about forty-five feet from where the wagon had stood.   The horses were thrown into a ditch and the wagon was broken in two, parts of it going on either side of the track.  Appellee was found on the north side of the track with some ties and the hind axle of the wagon over him. · His right arm was cut off and he was otherwise injured.

A. J. Hopkins, F. G. Hanchett, Fred A. Dolph, and R. B. Scott, (W. Duff Haynie, of counsel,) for appellant.

W. J. Tyers, and Alschuler & Murphy, for appellee.

Mr. Chief Justice Wilkin delivered the opinion of the court:

Counsel for appellant insist there was no evidence tending to show that appellee was in the exercise of ordinary care for his own safety, and that the trial court erred, for that reason, in refusing to give a peremptory instruction to find for the defendant.   The theory upon

which counsel asked the instruction was, that appellee, in remaining upon the track for the purpose of saving his team, voluntarily exposed himself to danger merely to protect his property, and his act amounted to negligence *per se.* Although the law will not justify a party in exposing himself to personal danger in order to protect his property, appellee had the right to try to get his wagon off the railroad track if the circumstances were such as to justify a reasonable belief that he could do so with safety. The fact that Hord had gone up the track, around the curve, to flag any train which might be approaching, was calculated to lead him to think it would be stopped and that he would have time to save his team and wagon. He also had the right to assume that the train would not approach at a dangerous rate of speed and without warning. Under the circumstances as they appear from the record we cannot say the jury could only draw one inference (that of negligence) from his act, and therefore it was negligence *per se.* On the contrary, to say the least, a different conclusion might reasonably be drawn by different minds, and such being the case, it was a question to be submitted to the jury. *Illinois Central Railroad Co.* v. *Anderson,* 184 Ill. 294.

Moreover, the declaration charges the defendant with willfully and maliciously inflicting the injury. If the record discloses any evidence tending to support that averment, negligence on the part of the appellee, if conceded, would not excuse the appellant. (*Lake Shore and Michigan Southern Railway Co.* v. *Bodemer,* 139 Ill. 596.) The evidence tends to prove that the train was going at a high rate of speed around a sharp curve, where the view was obstructed by an embankment, approaching a street which was much traveled, giving no warning by the ringing of the bell or sounding the whistle; and this testimony, without passing upon its weight or whether it was overcome by other evidence, tended to prove the charge of willfulness and wantonness in the management of the

train. The jury might well have based its verdict upon that theory of the case. All controverted questions of fact must be treated as settled adversely to appellant.

Complaint is made that the trial court refused to give two instructions for the appellant with reference to the "proximate cause" of the injury. They were both misleading, in that they singled out one fact and asked the court to tell the jury that it could not be regarded as the proximate cause, while such fact was really only one of a series of facts which together might have been the proximate cause. Even had they set forth the law correctly they were properly refused, because that branch of the cause was clearly set forth in other instructions given. Twenty-seven instructions were given on behalf of defendant, many of which are, to say the least, most favorable to it and which cover every phase of the case.

We find no prejudicial error in the record. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*