Cleary v. Bloomington, Pontiac & Joliet E. Ry. Co., 150 Ill. App. 418.

unskillfully and negligently treated the case thereafter, the fact that the appellant may have been negligent and caused some injury to himself would not relieve the surgeon from any damages that might have been sustained because of such subsequent negligence of the surgeon, if any, but the surgeon would be responsible for all the damages that were the direct result of his subsequent negligence; a surgeon will not be relieved from responding in damages for subsequent negligent treatment because the appellant had previously thereto been negligent or careless. If the negligence of a patient contributed proximately to the injuries, then there can be no recovery, but negligence on the part of a patient is not a bar to recovery where it did not contribute proximately to the injuries caused by a surgeon's malpractice. The evidence is very conflicting as to the cause of the injuries alleged in the declaration. The 6th, 9th, 10th and 11th instructions should have been more carefully guarded on the foregoing propositions, and being misleading and liable to erroneous interpretations, the judgment is reversed and the cause remanded because of such misleading instructions.

*Reversed and remanded.*

---

**Michael Cleary, Administrator, Defendant in Error, v. Bloomington, Pontiac & Joliet Electric Railway Company, Plaintiff in Error.**

### Gen. No. 5,143.

1. CONTRIBUTORY NEGLIGENCE—*when passenger riding in vestibule of traction car not guilty of.* Notwithstanding a printed request that passengers shall not ride in the front vestibule of a car, yet it is not contributory negligence for a passenger so to do if the car is otherwise crowded and his fare is collected by the conductor in the presence of the general manager of the road and no objections made to his riding in such front vestibule.

2. NEGLIGENCE—*when collision result of.* Held, under the evidence, that the collison in question in this case was the result of

the negligence of the motorman of the traction car upon which the plaintiff was riding in failing to use the means at his disposal to bring his car to a full stop; it being further held that it was negligence not to stop such car even though it might result in injury to the electrical apparatus of the defendant company.

3.  PASSENGER AND CARRIER—*care required of latter.*  A carrier of passengers is bound to do all that human care, vigilance and foresight can reasonably do, consistently with the mode of conveyance, the practical operation of its road and the exercise of its business as a carrier, for the safety of its passengers.

Action in case for death caused by alleged wrongful act.  Error to the Circuit Court of Livingston county; the Hon. GEORGE W. PATTON, Judge, presiding.  Heard in this court at the April term, 1909.  Affirmed.  Opinion filed October 19, 1909.

A. C. NORTON, JOHN M. RAYMOND and JOHN K. NEWHALL, for plaintiff in error.

R. S. McILDUFF and B. R. THOMPSON, for defendant in error; JOHN M. CLEARY, of counsel.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is a writ of error prosecuted from a judgment for $3,534.50, rendered in an action in case begun by defendant in error, as administrator of the estate of William P. Cleary, deceased, against the Bloomington, Pontiac and Joliet Electric Railway Company, plaintiff in error, for, as averred, negligently causing the death of the intestate.  No question is raised on this writ of error concerning the pleadings, upon any ruling concerning the evidence, or upon the giving or refusing of instructions.  The only question presented by the plaintiff in error is its contention that the deceased was not in the exercise of due care and lost his life because of his own negligence.

The evidence shows that plaintiff in error owns and operates an electric interurban railway from the city of Pontiac to the village of Dwight.  About a mile and a half north of Pontiac on the line of plaintiff in error's railway there is a baseball park; some distance north of the ball park is a stopping place called Cayuga; northeast of this is what is known as the

viaduct; at the viaduct is a curve; about one mile northeast from the viaduct is Nettleton's crossing; about 1500 feet northeast from Nettleton's crossing is Klein's crossing; the village of Odell is northeast of this, being about midway between Pontiac and Dwight. The plaintiff in error owned and operated two cars, each forty-three feet in length, one called the Dwight, having seating accommodations for forty-six persons, and the Pontiac, having seating accommodations for forty-two persons. The deceased was a druggist conducting his business in the city of Pontiac, but residing in Odell, and riding to and from his place of business and residence over the line of plaintiff in error. On Sunday, August 4, 1907, at 5:30 P. M., the deceased got on the car Pontiac, at Pontiac, to go to his residence. The car Pontiac had a vestibule at each end, about five feet by seven; the front of the car from the roof to about four feet from the floor was of glass construction, the partition between the vestibule and the passenger compartment being of wood with a door opening from each vestibule into the passenger compartment, which had an aisle down the center. The floors of the vestibules were six or seven inches below the floor of the passenger compartment. In each vestibule was a controller, operated by the motorneer, for regulating the current of electricity from the trolley into the motor under the car; by the side of the controller was a lever which operated the air brakes, and at the side of the air brake was a hand brake. The cars were geared to run from thirty to forty miles an hour.

On the day of the accident a Chautauqua was being conducted in the city of Pontiac and there was also a ball game at the park. Passengers entered the car by a side door into the vestibule and thence through the door into the passenger compartment. When deceased entered the car there were but few passengers and many vacant seats, but he remained in the front vestibule, sitting on a stool which was ordinarily used by the motorneer. There was posted up in each vestibule

a notice: "Your safety depends very largely upon the motorman giving his entire attention to his duty. For this reason passengers are requested not to ride in the front vestibule if there is room in the car. James H. Hessin, General Manager." The attention of the deceased had been previously called to this notice, but notwithstanding that he had been in the habit of riding in the vestibule, claiming that the air inside was oppressive to him, he being a man weighing about 190 pounds, five feet five inches high, afflicted at the time with some heart difficulty and recently having had an attack of pneumonia. When the car passed the ball park there were in it about 86 registered passengers and some unregistered ball players, many of the passengers being obliged to stand. The car Dwight was just ahead of the Pontiac, and the cars ran close together from the ball park. The front car stopped at Cayuga, but the Pontiac only slowed down until the front car got out of the way. From the curve at the viaduct to Klein's crossing there is a down grade of over twenty-eight feet; the motorneer had charge of the controller when the car started from Pontiac; the general manager Hessin was on the car the deceased was on and soon after leaving Pontiac took charge of the controller and was managing the motor power of the car from that time until the accident happened. The deceased was occupying the motorneer's stool in the front vestibule where were also the motorneer and the general manager when his fare was collected, but none of them made any request of him to go into the other part of the car. When the car Pontiac came around the curve at the viaduct it was going about forty miles an hour and the general manager discovered when Nettleton's crossing was called that he could not stop the car because the brake did not work. The front car was then near Klein's crossing and was having trouble with its trolley and going slowly. The conductor on the front car was riding on the rear bumper; the general manager permitted his car to

overtake the head car and motioned to the conductor of the front car to go ahead, calling to him that he could not stop his car; the conductor of the front car signalled to his motorneer to go ahead; the rear car continued at a high rate of speed until within twenty feet of the front car, when the general manager reversed the power, but the car ran into the front car with great force, jolting it ahead and then came on and struck it the second time. By the collision the deceased was so injured that he died three days thereafter. The general manager testified that after discovering that the brake would not work he could have stopped his car by reversing the power and running the wheels backwards, but by doing so he would disconnect the power in the powerhouse in Pontiac, and both cars would then be without power; that he did not want to do this and did nothing more while the car went 1,500 feet, except to wave to the conductor on the front car to go ahead and to call to him that he could not stop his car. The evidence clearly shows that the general manager for some time before the accident knew that the brakes were not working on the car that he was controlling; and that he could have stopped it by reversing the power, but did not want to do this because of what would happen at the power house. This does not appear to be a good reason or excuse for not reversing the power when the lives of passengers were at stake. The car was going very fast on a rapid down grade and the manager knew before reaching Nettleton's crossing that he could not control the car with the brakes because they would not work. When it appeared that the front car was running slowly, having trouble with the trolley, and that the rear car was running very fast, overtaking the front car, and the brakes would not work, it was negligence to run within twenty feet of the front car before reversing the power, even if damage would thereby be caused to plaintiff in error's electrical apparatus at the power house.

There is no evidence showing that any attempt was made to use the hand brake. The evidence also tends to show that the failure of the air brake to work was caused by the excessive loading of the car, which caused the car to settle down on the trucks which, in some way, interfered with the operating of the brakes.

A carrier of passengers is bound to do all that human care, vigilance and foresight can reasonably do, consistently with the mode of conveyance, the practical operation of its road and the exercise of its business as a carrier, for the safety of its passengers. C. & A. R. R. Co. v. Arnol, 144 Ill. 261. The circumstances under which the collision occurred strongly tended to show gross negligence amounting to wantonness on the part of the plaintiff in error in the management of its car. E. J. & E. Ry. Co. v. Duffy, 191 Ill. 489; I. C. R. R. Co. v. Leiner, 202 Ill. 624.

The notice posted in the car was simply a request to passengers not to ride in the front vestibule so as not to distract the attention of the motorneer, and they were not to ride in the vestibule if there was room in the car. There was no room in the passenger compartment of the car, at the time of the accident, as there were double the number of passengers in the car that it was intended to carry. The fact that the deceased was in the front vestibule is the only matter that is urged as a want of care on his part. The general manager was there at the time, saw the situation of the deceased in the vestibule, and the conductor collected his fare while he was in the vestibule without objection. From the evidence of the manager it is shown that passengers rode on the front vestibule daily without objection by the manager or other employes. The fact that the deceased was in the vestibule cannot reasonably be urged as contributory negligence on his part, when he was occupying a seat there, and there were neither vacant seats nor standing room elsewhere. Judgments have been sustained under circumstances very similar, in Petersen v. E. A. & S. Trac. Co., 238 Ill. 403; C. & A. R. R. Co. v. Fisher, 141

Ill. 614; Metropolitan W. S. E. Ry. Co. v. Kowalski, 139 Ill. App. 89. Under the circumstances shown by the evidence in this case the question whether the proof showed that the deceased was in the exercise of ordinary care at the time he was injured was properly left to the jury, and we would not be justified in saying the judgment is not sustained by the evidence.

The judgment is affirmed.    *Affirmed.*