Kate Fickerle, Administratrix of the Estate of Charles Bowles, Deceased, Appellee, v. Herman Seekamp, Inc., Appellant.

**Gen. No. 36,886.**

312

 Heard in the second division of this court for the first district at the June term, 1933. Opinion filed March 6, 1934.

McKenna, Harris & Schneider, for appellant; James J. McKenna and Abraham W. Brussell, of counsel.

Joseph D. Ryan and Louis P. Miller, for appellee.

Mr. Justice Scanlan delivered the opinion of the court.

In an action on the case a jury found defendant guilty and assessed plaintiff's damages at the sum of $5,000. Defendant has appealed from the judgment entered upon the verdict.

The first count of the declaration charges general negligence. The second, wilful and wanton conduct. The third, a violation of the statute of the State regulating the speed of automobiles in the business districts of municipalities. The fourth, a wilful and wanton violation of the State statute that regulates the speed of automobiles in said districts. The fifth, that defendant, by its agent and servant, negligently operated its motor truck northward in Crawford avenue at or near the intersection with 13th street without giving any reasonable warning of the approach of said motor truck, without having used every precaution to avoid injuring plaintiff's intestate, and without stopping the said motor truck until it could safely proceed upon approaching a person walking upon or along a public highway, in violation of the provisions of the statute of the State. The first count alleges, in substance, that defendant, by its agent and servant, drove its motor truck in a northerly direction on Crawford avenue at or near its intersection with 13th street; that Crawford avenue was a much used and traveled

public highway; that while the deceased was in the exercise of due care for his own safety and was proceeding easterly across Crawford avenue at or near the said intersection, defendant, by its agent and servant, carelessly and negligently drove, ran, managed and operated the truck at or near the said intersection; that as a direct and proximate result of the negligence of defendant, by its agent and servant, the truck struck the deceased with great force and violence and knocked him to the ground, and he sustained and received physical injuries which caused his death on November 9, 1931; that he left him surviving two daughters, Helen Bowles and Kate Fickerle, who suffered pecuniary loss as a result of his death. The count alleges that suit was brought within one year from the date of death of plaintiff's intestate, that letters of administration were issued to plaintiff by the probate court of Cook county and that plaintiff was damaged in the sum of $10,000. Each of the other counts also contains certain of the aforesaid allegations. Defendant's only plea at the time of trial was the general issue.

But two witnesses testified to the facts surrounding the accident, Carl Zitzer, for plaintiff, and Carl Rogers, the driver of the truck, for defendant. The following facts are not disputed: The accident occurred about 7 p. m. on November 6, 1931. Rogers, just prior to the accident, was driving a light delivery truck northward in the north-bound car tracks on Crawford avenue across its intersection with 13th street. Crawford avenue runs north and south and 13th street east and west. He was alone in the truck. The intersection is in a closely built-up business district. 13th street is a street car stop for cars operating on Crawford avenue. Rogers knew that south-bound street cars on Crawford avenue stopped to discharge and receive passengers on the north side of 13th street and that as he crossed the intersection he was "passing

through a business district in the evening when people were getting off street cars, with business buildings on both sides of the streets.'' The intersection ''was quite well lighted. The weather was clear that evening; the street was dry.''

Zitzer testified that he lived in the building on the northeast corner of Crawford avenue and 13th street; that at the time of the accident he stood just outside the Crawford avenue door of the building; that just prior to the accident a south-bound street car approached 13th street, made the usual stop on the north side of the street and then continued south; that as the truck approached the north side of 13th street the street car was then south of that street and that there were no obstructions on the crossing ''during the time or when the street car was passing south of 13th street.'' He further testified that it ''seemed'' to him that the deceased ''came around the back of the street car''; that deceased, when he first saw him, was crossing the street and was then on the south-bound car track; that he was going from west to east, ''inclining a little to the southeast,'' and was about 10 feet north of the north crosswalk of 13th street; that he (Zitzer) did not at that time see the truck nor was he aware of its approach until he heard the horn, at which time the deceased was in the north-bound track; that the truck was about 15 feet south of deceased at the instant the driver blew his horn; that the truck was then in the north-bound street car rails and was going northward ''about thirty-five miles per hour''; that as the horn was blown the deceased took a quick step toward the east and then the truck swerved to the right and the fender and bumper on the left front side of the truck hit the man and ''he was thrown back into the car tracks, about ten feet north''; that the rear end of the truck was three feet north of where the man was lying at the time it stopped; that the driver sounded his horn but once before the accident. The witness

further testified that he had had experience in driving automobiles and that he is able to tell approximately how fast a vehicle is moving as it approaches and passes him on the street; that the deceased did not at any time run.

Rogers testified that the accident occurred about 30 feet north of 13th street and that at the time of the same he was driving about 15 miles an hour; that his brakes were in good condition and that under the existing conditions he could stop the truck in 15 to 18 feet when he was going 15 miles an hour; that "I first saw the man who was killed as I just crossed the intersection of 13th street, . . . at that time he was about fifteen feet in front of my car"; that the truck was in the north-bound car tracks. "Q. From the time you first saw him, what did he do? A. He stopped just a moment; I blew my horn and he most stopped for just a moment, and then he ran across into my truck. . . . Q. At the time he started to run, what did you do? A. I blew my horn and I took my foot off the accelerator and had it ready to apply the brakes which I did when I seen the man was going to run into me. Q. Now, when you applied your brakes, in what distance did you stop? A. In about fifteen to eighteen feet. Q. Did you keep on going straight, or did you turn to one side? A. I swerved a little bit toward the curb." He further testified that at the time of the accident the truck was on the east side of the north-bound car track "on an angle"; that when he first saw the man the latter was walking, "heading east—a little southeast." Upon cross-examination the witness testified that the deceased ran into the rear part of the body of the truck. "Q. There was nothing as you approached 13th street, or as you crossed the street that would prevent your seeing what was in the street ahead of you, was there? A. No, sir. Q. You had a clear view of the crossing? A. Yes, sir. Q. And the street was quite well lighted, wasn't it, Mr. Rogers? A. It was.

. . . Q. How far south of him were you when you first saw him in the south bound track as you now state? A. About thirty feet. . . . Q. How far were you south of him when you first saw him? A. About fifteen feet.'' He further testified that the truck was then about 15 feet north of the north curb of 13th street; that at that moment the man started to run directly into the body of the truck and that he was lying about four feet behind the truck when it came to a stop; that he did not swerve the truck to the right until the man ran into it; that when he saw the man start to run he slammed on his brakes and tried to stop the truck; that he saw nothing in the street but the deceased crossing; that he did not see the deceased until he saw him on the south-bound track; that ''there were no automobiles passing, or street cars passing at the time at all''; that he did not ''see the old man until he was over on the track.'' At the end of his cross-examination Rogers stated: ''I swerved it at the time to try to avoid him, yes, before he struck the truck,'' but this answer appears to have been stricken out. He was then asked the following: ''Did you swerve your truck to the right at any time before you struck him? A. No, sir. Q. Then it was after he ran into the rear part of your truck that you turned to the right, whatever swerving you did? A. I swerved, yes, then.'' As the witness testified that he could not remember that certain questions were put to him before the coroner's inquest, plaintiff, in rebuttal, was allowed to introduce evidence that before the coroner the witness testified as follows: ''Q. What part of the street were you driving in when you first seen him? A. I was driving in the north-bound car tracks. Q. Where was the pedestrian? A. He was on the west side of Crawford Avenue, about thirty feet north of the crosswalk. Q. How far from the street car tracks? A. Why, when I first saw him he was starting across the south-bound tracks, when I sounded the horn. Q.

Were you driving in the rails? A. I was driving in the rails by the time that I saw him, the time that I sounded my horn. Q. How is it you could not stop for this man, if you applied your brakes? A. Well, I was practically stopped when the gentleman ran into the rear end of the truck. Q. How far did you swerve? Did you swerve to the right of him? A. I tried to go around, to get away from him. Q. Well, how far did you swerve, how close did you get to the east curb? A. Well, about one and a half or two foot. Q. From the east curb? A. From the east curb, yes.''

After a painstaking study of the entire evidence we have reached the conclusion that the jury were fully justified in believing plaintiff's theory of fact.

In none of the contentions raised by defendant does it claim that the evidence would not warrant a finding that the driver was guilty of negligence. In fact, it states, in its brief, that it would not argue to this court "that Zitzer's testimony would not justify the jury in finding the defendant was guilty of negligence."

In support of a contention that "the trial court erred in denying the defendant's motion for a directed verdict made at the close of all the evidence," defendant argues: "A. The evidence as a matter of law shows that the defendant was not guilty of wilful and wanton misconduct toward the decedent. B. The record shows that the plaintiff cannot recover for negligence of the defendant because the record shows as a matter of law that the decedent was guilty of contributory negligence. C. Even though we assume that the evidence supports and proves the negligence counts of the declaration, yet if the evidence does not support the wilful and wanton counts the 'general' verdict of guilty must be set aside.''

As to point A: Our Supreme Court has frequently stated that it is difficult, if not impossible, to lay down a rule of general application by which to determine

what degree of negligence the law considers equivalent to a wilful and wanton act.

"Courts have recognized the difficulty of accurately stating under what circumstances a defendant may be held guilty of wilful and wanton misconduct in causing an injury. Such conduct imports consciousness that an injury may probably result from the act done and a reckless disregard of the consequences." (*Brown v. Illinois Terminal Co.,* 319 Ill. 326, 331.)

"Whether the negligent conduct of a defendant which has resulted in injury to another amounted to wantonness is a question of fact to be determined by the jury, if there is any evidence in the record fairly tending to show such a gross want of care as indicates a willful disregard of consequences or a willingness to inflict injury." (*Walldren Express Co. v. Krug,* 291 Ill. 472, 476. See also *Jeneary v. C. & I. Traction Co.,* 306 Ill. 392, 397.)

The driver was familiar with the intersection in question and knew that it is located in a business district and that the Crawford avenue street cars stop there to take on and let off passengers. He admits that there was nothing to obstruct his view as he approached and passed over the intersection. In fact, according to his testimony, there were no automobiles nor street cars upon the street and the only person that he appears to have seen was the deceased. Nevertheless, at the time of the accident, 7 p. m., many pedestrians might be expected to pass over such an intersection. As he approached 13th street, a southbound street car passed over the intersection and passed his truck, but he did not see it. He drove the truck across the intersection at a speed of 35 miles per hour. That he failed to keep a lookout in the direction in which he was proceeding is evident, for he testified that he was within 15 feet of the deceased before he saw him, although he admits that as he approached and passed over the intersection there was

nothing to obstruct his view. Certain evidence would warrant the assumption that the deceased was entirely across the street car tracks when he was struck. Before the coroner's inquest the driver testified that after he swerved to the right he got to within "one and a half or two feet from the east curb," and upon the trial he testified that the deceased was lying "four feet in the rear of the truck" when they picked him up. There is force in the argument of plaintiff that in spite of the speed at which the truck was being driven, if the driver, when he finally saw the deceased, had exercised any care, he could have avoided the accident by turning slightly to the left. Instead, however, he swerved the car in the direction in which the deceased was walking and as a result ran him down. In his conduct, upon the occasion in question, he violated three statutes: One, which forbids the operation of a motor vehicle through a closely built-up business section of the city at a speed greater than 15 miles per hour; another, that required him to keep a reasonably careful lookout in the direction in which he was proceeding; and still another, that required him to give reasonable warning of his approach. It is clear that had he kept any lookout as he proceeded across the intersection he would have seen the deceased in ample time to have avoided the accident. It is undisputed that the only time he sounded his horn was when the truck was within 15 feet of the deceased. It would be idle to argue that sounding the horn at that time, in view of the speed at which the truck was being driven, was a reasonable warning of its approach. Such a warning, under the circumstances, would be more likely to frighten and confuse the deceased than to aid him, whereas, had the horn been sounded in reasonable time the deceased could have avoided the onrushing truck. As to the speed at which the truck was going at the time, Rogers testified that after he saw the deceased and applied the brakes the truck continued

north for 15 feet, at which point it hit the deceased. Zitzer testified that the deceased was thrown north by the contact about 10 feet, and Rogers testified that when the truck came to a stop the deceased was lying four feet to the rear of it. The truck was 12 to 15 feet in length. It appears, therefore, even if we disregard the distance it ran toward the east, that the truck, after the brakes were applied, ran at least 44 feet. Considering the testimony of Zitzer that Rogers, as he proceeded across the intersection and approached the deceased, was driving the truck at the rate of 35 miles per hour, in the light of other facts and circumstances bearing upon the subject we are satisfied that the jury were fully justified in believing the testimony of Zitzer as to the speed. Defendant argues that the fact that the deceased was crossing the street at a point off the crosswalk relieves the defendant from the charge of wilful and wanton conduct. It is, at least, a fair inference from the evidence that the deceased had alighted from the street car, the back of which, as it stood still, would be more than 30 feet north of the curb on the north side of 13th street, and, therefore, in crossing the street to the east he would, in the exercise of due care, slant to the southeast, toward the crosswalk. Zitzer testified that when he first saw the deceased "he was about ten feet north of the north crosswalk," still "inclining a little to the southeast." That the care required of the driver was not lessened merely because the deceased was a few feet north of the crosswalk, see *Chicago City R. Co. v. Tuohy,* 196 Ill. 410, 414; *Ryan v. Larson,* 248 Ill. App. 651; *Ludwigs v. Dumas,* 72 Wash. 68; *Yanase v. Seattle Taxicab & Transfer Co.,* 91 Wash. 415. As Rogers testified that he saw the deceased when the latter was 15 feet in front of the truck, and as Zitzer places the deceased 10 feet north of the crossing, it appears, therefore, that Rogers saw the deceased before the truck had cleared the crossing. He had wilfully and

recklessly driven the truck over the intersection and the crosswalk at an excessive rate of speed, without keeping a reasonably careful lookout in the direction in which he was proceeding and without giving a reasonable warning of his approach, and to hold that his conduct must be treated as ordinary negligence merely because the deceased was slightly north of the crossing, would not be justified under the facts of this case nor the law governing it.

As to point B, that plaintiff cannot recover because the record shows that the deceased was guilty of contributory negligence: We are satisfied that the jury were justified in finding that Rogers was guilty of wilful and wanton conduct, and therefore the question as to whether or not plaintiff's intestate was guilty of contributory negligence is of no moment. It is the established rule of law of this State that in cases of this kind the question as to whether or not a person was guilty of contributory negligence is generally one of fact for the jury, and becomes a question of law only when the evidence so clearly fails to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. After carefully considering the evidence that bears upon the question as to whether the deceased, at and just prior to the time of the accident, was in the exercise of ordinary care, we have reached the conclusion that the jury would be justified in finding that he was not guilty of contributory negligence.

As to point C: The contention raised therein has been determined, and adversely to defendant, by the first division of this court and by this division. (See *Price v. Bailey,* 265 Ill. App. 358, 365; *Hawkins v. McClun,* 266 Ill. App. 601; *Provenzano v. Illinois Cent. R. Co.,* 272 Ill. App. 475, 482.) We may add that both divisions have given serious consideration to the point involved. *O'Neall v. Blair,* 261 Ill. App. 470, cited by

defendant, does sustain its contention, but see the later case decided in that district, *Wargo v. Buske,* 273 Ill. App. 28, 32.

In support of the further contention that "the court erred in denying defendant's motions made at the close of all the evidence to instruct the jury to find the defendant 'not guilty' under counts two and four of the amended declaration," defendant argues that there is no evidence to sustain the allegations of wilful and wanton conduct in those counts. We have already passed upon that point.

Defendant contends that the court erred in denying its motion in arrest of judgment because "counts two and four do not state a cause of action for wilful and wanton misconduct by the defendant," and, therefore, "the presence of the good counts for negligence will not be a ground for denying the defendant's motion in arrest of judgment." The contention as to the second and fourth counts is without merit. (See *Provenzano v. Illinois Cent. R. Co., supra,* pp. 479–481; *Williams v. Kaplan,* 242 Ill. App. 166, 178–180.) But even if they were fatally defective, the presence of the good counts for negligence would be a sufficient ground for denying defendant's motion in arrest of judgment. (See *Provenzano v. Illinois Cent. R. Co., supra,* p. 482; *Price v. Bailey, supra,* 365–8; *Hawkins v. McClun, supra.*)

Defendant contends that "the manifest weight of the evidence shows that the decedent was guilty of contributory negligence." We have already passed upon a similar contention. Defendant's argument is based largely upon the assumption that Rogers' testimony should be believed. As we have heretofore stated, we are satisfied that the jury were fully justified in believing the theory of fact of plaintiff. In connection with the instant contention defendant argues that the court erred in permitting plaintiff to intro-

duce in evidence several statements made by Rogers at the coroner's request. Defendant insists that this evidence was improper for the reason that it was not contradictory of what Rogers testified to at the time of the trial. We find no merit in this contention.

Defendant next contends that the court erred in allowing plaintiff's counsel to make an improper closing argument over the objection of defendant. Defendant's counsel, in his argument to the jury, did not refer to the question of the amount of the verdict, and in plaintiff's closing argument counsel briefly referred to the question of damages, to which defendant's counsel objected upon the ground that he did not take up that subject in his argument. The trial court held that as plaintiff's counsel, in his opening argument, referred to the question of damages that the fact that defendant's counsel did not see fit to reply to it did not bar plaintiff's counsel from further discussing it in his concluding argument. After an examination of the opening argument of plaintiff's counsel we find that in the closing part of the same he referred, at some length, to the question of damages in case the jury found defendant guilty. While counsel for plaintiff argued for a verdict of $10,000, the jury allowed but $5,000. Moreover, defendant, in its brief, has not contended nor argued that the damages are excessive. There is not the slightest merit in the instant contention.

Defendant next contends that the wilful and wanton counts charge defendant with the commission of the crime of manslaughter, and, therefore, plaintiff was bound to prove the commission of the felony beyond a reasonable doubt, and that the trial court erred in refusing to give defendant's instruction number 16, which reads as follows:

"It is charged in two of the counts of the plaintiff's declaration that the accident in question hap-

pened as the result of wilful and wanton carelessness on the part of the defendants. You are instructed that before the plaintiff can recover under these counts of the declaration against the defendants, the plaintiff must prove his case beyond a reasonable doubt, and if you find that the plaintiff has not proved his case under these counts against the defendants beyond a reasonable doubt and the defendants were not guilty of wilful and wanton carelessness at and before the accident occurred, then you should find the defendants not guilty as to said counts of the plaintiff's declaration.''

Without discussing the question as to whether or not the evidence would justify the jury in finding defendant guilty, under the wilful and wanton counts, beyond a reasonable doubt, it is sufficient to say that the rule invoked does not apply to the instant case. The driver is a stranger to the suit and is in no way bound by the judgment in this case. In *McInturff v. Insurance Co. of North America,* 248 Ill. 92, the principal case relied upon by defendant, plaintiff sued to recover for a loss by fire of his property covered by insurance written by defendant. Defendant filed the plea of the general issue, coupled with notice of defenses, as follows: ''(1) That defendants in error willfully burned the insured property with intent to defraud plaintiff in error; . . . '' and it was held that as defendant charged that plaintiff ''himself set fire to the building,'' it was necessary for it to prove such defense beyond a reasonable doubt. But the Supreme Court, in *Foster v. Graf,* 287 Ill. 559, held that the aforesaid rule does not apply where the person accused of the crime in the pleadings and evidence is not a party to the suit but is a stranger to the record. (See also *Wilson Grocery Co. v. National Surety Co.,* 218 Ill. App. 584, 593; *Bernier v. Illinois Cent. R. Co.,* 296 Ill. 464; *Fekete v. Fekete,* 323 Ill. 468, 477; *Wag-*

*goner v. Clark,* 293 Ill. 256, 262; *Sussman v. Massachusetts Bonding & Ins. Co.,* 230 Ill. App. 276, 280.) We may further say that defendant is in no position to raise the instant contention, for it appears that the court, at the request of defendant, gave instruction number 31, which states that ''in order that the defendants may be held guilty of wilful and wanton conduct it must be shown by a preponderance of the evidence . . . .''

Defendant next contends that the court erred in giving to the jury plaintiff's instruction number two, which reads as follows:

''The court instructs you relative to the first, third and fifth counts of plaintiff's declaration that the rights of persons on foot and drivers of automobiles upon the public highways are equal. Both persons on foot and drivers of automobiles on the public streets are required by law to use such care as an ordinarily prudent person would use under like or similar circumstances. Persons are entitled to cross streets on foot and the law required that while doing so they use ordinary care for their own safety. Automobiles are permitted to be driven upon the streets and the law requires that the drivers thereof shall use ordinary care for the safety of pedestrians.''

Defendant contends that this instruction conflicts with section 1982 of the Chicago Municipal Code of 1931 and, therefore, it should not have been given. The said code was published June 25, 1931, but on July 30, 1931, the Uniform Traffic Code was passed, which expressly repealed all previous enactments on the subject. The same instruction was before us in *Hathaway v. Shannon,* 265 Ill. App. 600, where we said:

''Instruction No. 21 did not direct a verdict but told the jury that the rights of persons on foot and drivers of automobiles upon the public highways are equal, and both are required to use such care as an ordinarily

prudent person would use under like or similar circumstances; that persons are entitled to cross streets on foot and that while doing so they must use ordinary care for their own safety, and that drivers of automobiles must use ordinary care for the safety of pedestrians. In our opinion this instruction correctly stated the law (*Kerchner v. Davis*, 183 Ill. App. 600).''

As stated in *Chicago City R. Co. v. Tuohy, supra,* p. 415, and in many other cases that might be cited, pedestrians have the same right to the use of the public highways as the drivers of automobiles or other vehicles.

We have now considered the many contentions raised by defendant upon this appeal. In some of them defendant seeks to reopen settled questions of law.

This case was tried before an able and experienced judge and we are satisfied that defendant has had a fair and impartial trial. The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

Sullivan, P. J., and Gridley, J., concur.