Peter Janjanin, Administrator of Estate of Mary Janjanin, Deceased, Appellant, v. Indiana Harbor Belt Railroad Company et al., Defendants. Indiana Harbor Belt Railroad Company, Appellee.

Gen. No. 45,241.

Opinion filed May 9, 1951. Rehearing denied May 29, 1951. Released for publication July 5, 1951.

OLLIE E. STONE, and JAMES B. COONEY, of Chicago, for appellant; CHARLES T. SHANNER, of Chicago, of counsel.

SIDNEY C. MURRAY, MARVIN A. JERSILD, and LLOYD W. BOWERS, of Chicago, for appellee.

MR. JUSTICE LEWE delivered the opinion of the court. This is an action under the Injuries Act, Ch. 70, Ill. Rev. Stat. 1949, [Secs. 1, 2] [Jones Ill. Stats. Ann. 38.01, 38.02] State Bar Asso. Ed., for wrongful death arising out of a collision between a freight train op-

erated by defendant Indiana Harbor Belt Railroad Company and the automobile of plaintiff's intestate which stalled on the railroad crossing at Francisco Avenue in the city of Blue Island, Illinois. Plaintiff brought suit against the railroad and members of the train crew, Harry Anderson, William Willig, Ray Birr and Nathan Anno. William Willig, the engineer, died and the action was abated as to him. A jury trial resulted in a verdict against the railroad and assessment of damages in the sum of $6,125. The other defendants were found not guilty. On defendant's motion a judgment notwithstanding the verdict was entered in favor of the railroad and an alternative motion for a new trial was denied. Plaintiff appeals.

The complaint consists of two counts. The negligence charged in the first count is that the railroad failed to maintain a flagman, an automatic bell, or signal light at the crossing; that it failed to sound a bell or whistle at the crossing as required by the statute and to maintain a lookout for persons lawfully using the right of way; that the railroad operated a train at a dangerous speed, and that it failed to warn plaintiff of the approach of the train or to yield the right of way.

The second count alleged all the acts of negligence appearing in the first count but charged that they were committed in a willful and wanton manner.

Plaintiff's sole contention is that the evidence of wrongful conduct of defendant railroad and of the due care of plaintiff's intestate presented questions of fact for the jury to determine.

The collision occurred about two o'clock p. m. on April 24, 1945. It was a clear day and the visibility good. Francisco avenue runs north and south and intersects four tracks of the railroad which at this point runs east and west. About 250 feet west of Francisco avenue the railroad tracks curve in a northerly direction for about 550 feet. There is a whistle

board about 1,300 feet to the west of Francisco avenue. The crossing in question was not protected by a watchman nor were there any gates, bells, lights, or other signal devices. Plaintiff's decedent resided about 250 feet southwesterly of the scene of the accident. On the day of the occurrence decedent, aged 61, accompanied by Nick Billk, drove her 1937 Oldsmobile sedan from her home and proceeded east on Vermont street to Francisco avenue where she turned north across the railroad tracks. Both front windows of the automobile were open. When decedent reached the south side of of the tracks she stopped her car momentarily and then proceeded to cross at about five or six miles an hour. While on the second track the motor died and decedent's car remained stalled for four or five minutes, when it was struck by defendant's freight train.

Billk testified that as decedent's automobile approached the crossing he "looked out on both sides" and did not see any train coming from the west; that while the automobile was stalled he looked in each direction; that he did not hear any whistle blow or bell ring; that decedent also watched for approaching trains; that she tried "to start the starter" but that it failed to function; that when the witness first saw the locomotive of the eastbound freight train about "the middle of the curve" he shouted to decedent "to get out," grabbed the door and jumped out of the car; that he saw decedent open the door, "she aint got no chance out"; and that the freight train was traveling about 40 miles an hour.

Plaintiff's evidence further discloses that the decedent did not wear glasses, had good eye sight; that her hearing was not impaired, and that she had driven an automobile since 1920.

It is uncontroverted that about 600 people, most of whom are children, live in the neighborhood where plaintiff's intestate resided, and that Francisco avenue

494

is the only highway used by people residing in that area having occasion to go in and out of the city of Blue Island.

Frank E. Thompson, called by defendant, testified that he was near the intersection at the time of the occurrence; that he observed the freight train coming from the west; that when the train was about 150 feet west of the crossing he heard ''a series of train whistles''; that he saw Billk jump out of decedent's automobile and run across the tracks to the north; and that the freight train was traveling about 20 or 25 miles an hour and stopped about 300 feet east of the crossing after the collision.

Bernard Ofelt, flagman on the train in question, testified that he was riding in the caboose; that the train consisted of 72 loaded cars and was running between 20 and 25 miles an hour; and that after the emergency brakes were applied it traveled about 300 feet.

H. D. Murphy, road foreman of engines for the defendant railroad, testified that a train of 70 loaded cars going about 40 miles an hour would run from 1500 to 1700 feet after the emergency application of the brakes; that if the train was going 25 miles an hour, upon an emergency application of the brakes it would stop in 1,000 or 1,100 feet; and that such a train going at 20 miles an hour would stop in approximately 600 or 700 feet.

Upon plaintiff's objection members of the train crew named as parties defendant were barred from testifying under the provisions of sec.. 2, ch. 51, of the Evidence Act, p. 1907, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 107.068], State Bar Ed. 1949.

■■ Where there is evidence fairly tending to support the allegations of the complaint the case should be submitted to the jury. A motion for judgment notwithstanding a verdict should be allowed if, when all

495

the evidence is considered with all reasonable inferences to be drawn therefrom, in its aspect most favorable to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case. (*Carrell v. N. Y. C. R. Co.*, 384 Ill. 599.) To the same effect see *Goodrich v. Sprague*, 376 Ill. 80.

■ The credibility of the witnesses, the weight of the testimony, and the inferences to be drawn from the facts proved are all questions for the jury to pass upon, and not for the court to decide. (*Molloy v. Chicago Rapid Transit Co.*, 335 Ill. 164; *Libby, McNeill & Libby v. Cook*, 222 Ill. 206.)

Plaintiff relies on the case of *Elgin J. & E. Ry. Co. v. Duffy*, 191 Ill. 489. In that case the railroad company was charged with willfully and maliciously inflicting an injury resulting from a collision at a street crossing between a horse-drawn vehicle and a train. The railroad company insisted that there was no evidence tending to show that the driver of the vehicle was in the exercise of ordinary care for his own safety, and that the trial court erred in failing to give a peremptory instruction directing the jury to find for the railroad company upon the theory that in remaining upon the track for the purpose of saving his team appellee Duffy voluntarily exposed himself to danger merely to protect his property and that his act amounted to negligence *per se*. The court said, at page 492: "Although the law will not justify a party in exposing himself to personal danger in order to protect his property, appellee had the right to try to get his wagon off the railroad track if the circumstances were such as to justify a reasonable belief that he could do so with safety. . . . He also had the right to assume that the train would not approach at a dangerous rate of speed and without warning. Under the circumstances as they appear from the record we

cannot say the jury could only draw one inference (that of negligence) from his act, and therefore it was negligence *per se.* . . ."

Defendant railroad contends that it was not guilty of willful and wanton conduct as a matter of law. It argues that almost under identical circumstances this proposition has been decided contrary to plaintiff's contention in the recent case of *Gulf, M. & O. R. Co. v. Freund,* (Ct. of App. 8th Circ.) 183 F. (2d) 1005. In that case a judgment was entered on a jury verdict in an action for damages for personal injuries. The evidence shows that the collision occurred in Illinois, about 7:45 a. m., where a State highway crossed the railroad tracks at approximately right angles, the railroad running generally north and south. Appellee approached the railroad crossing from the west and while his automobile was stalled on the crossing was struck by appellant's northbound train. On the day of the accident the highway was covered with snow and sleet and because of a fog the visibility to the south of the crossing was limited to 650 or 700 feet. The crossing where the accident occurred was in the open country. The highway itself was a secondary road and there was no evidence that it was heavily traveled. Appellee, who was the sole witness, testified that he was familiar with the crossing and that as he approached it he was constantly looking and listening for trains but heard and saw none; that from the crossing itself he had a clear view of the railroad tracks to the south of from 650 to 700 feet. When the front wheels of his car crossed the first rails of the track his engine died. During this time his attention was directed to the operation of his car. He attempted to get his automobile in motion and remained on the crossing twelve or fifteen seconds before the collision occurred. During this time he was watching for trains but neither saw nor heard the train until suddenly he discovered

497

the locomotive about 150 feet from his automobile. He tried to escape from his car but was unable to do so before the locomotive struck him. The freight train which struck appellee's automobile consisted of 75 cars and approached the crossing at a speed of 40 miles an hour. In reversing the judgment the court concluded that the proximate cause of the collision was due to appellee's negligence "in remaining in a position of known danger," thus holding that in Illinois the same standard of conduct is applicable to a motorist stalled on a railroad crossing as applies to one merely guiding his vehicle over a crossing.

In the case last cited, in a dissenting opinion, Judge Johnsen ruled that the question of contributory negligence in a general stalled-car situation is not one of law but of fact, and in support of his position cited *Broad v. Pennsylvania R. Co.,* 357 Pa. 478, 55 A. (2d) 359; *Marfilues v. Philadelphia & R. R. Co.,* 227 Pa. 281, 75 Atl. 1072; *Moore v. Atlantic Coast Line R. Co.,* 201 N. C. 26, 158 S. E. 556; *Sutter v. Pere Marquette Ry. Co.,* 230 Mich. 489, 202 N. W. 967; *Schaaf v. Coen,* 131 Ohio St. 279, 2 N. E. (2d) 605.

No authorities have been called to our attention in the briefs nor have we been able to find any in which the courts of review of our State have passed upon a similar case involving a collision between a train and a stalled automobile at a street crossing. There are some factual distinctions between *Gulf, M. & O. R. Co. v. Freund,* 183 F. (2d) 1005 and the present case. Here the evidence shows that the train came around the curve several hundred feet west of the only crossing serving a community of about 600 persons, whereas the motorist in *Gulf, M. & O. R. Co. v. Freund,* crossed the track on a secondary country road running through a sparsely settled farming area. There are also some dissimilarities between the facts of this case and those of *Elgin, J. & E. Ry. Co. v. Duffy,* 191 Ill. 489, relied

on by plaintiff, but no valid reason has been suggested why the principle announced in that case is not applicable in this case.

██ The law recognizes that the conduct of a reasonable man will vary with the situation with which he is confronted. The situation confronting a motorist whose automobile unexpectedly stalls on a railroad crossing is different from that of a motorist whose automobile responds to his direction while driving over a crossing. In our opinion the standard of conduct required of a motorist in each of these situations is not the same. The application of the doctrine contended for by defendant railroad would require the immediate abandoning by the motorist of his automobile when it becomes stalled and fleeing to a place of safety, giving no thought to the preservation of his property or to the prevention of injury to others in the event the train was derailed by colliding with the automobile.

██ Defendant says that decedent could have seen, had she looked, approximately 1,400 feet to the west. The evidence is not clear as to how far decedent's view to the west was unobstructed. Whatever that distance may have been it would seem that members of the train crew riding in the cab of the locomotive could have seen decedent's stalled automobile an equal distance to the east. If the jury believed that defendant's freight train was traveling 20 to 25 miles an hour as it approached the intersection, we think the jury could find that the crew members in the exercise of ordinary care could have prevented the collision by stopping the train before it reached the intersection.

██ In passing on a motion for a judgment notwithstanding the verdict the evidence most favorable to the plaintiff must be taken as true.

██ A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the

safety of others, such as a failure after knowledge of impending danger to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness, when it could have been discovered by the exercise of ordinary care. (*Schneiderman v. Interstate Tr. Lines,* 394 Ill. 569.) Whether a personal injury has been inflicted by willful and wanton conduct presents a question of fact to be determined by the jury. (*Bernier v. Ill. Cent. R. R. Co.,* 296 Ill. 464.) In our view the evidence in the case at bar fairly tends to support the allegations of the second count of the complaint. Since the defendant railroad has not filed a cross appeal the question whether the verdict is against the manifest weight of the evidence is not before us.

For the reasons given, the judgment notwithstanding the verdict entered in favor of defendant is reversed, and the cause is remanded with directions to enter judgment on the verdict of the jury in favor of plaintiff and against defendant railroad.

*Reversed and remanded with directions.*

BURKE, P. J. and KILEY, J., concur.