**NATTENS v. GROLIER SOCIETY, Inc. et al.**

No. 10488.

United States Court of Appeals
Seventh Circuit.

March 27, 1952.

Rehearing Denied April 24, 1952.

450

William C. Wines, Donald M. Roche, Chicago, Ill., for appellant.

Bernard F. Martin, Thomas K. Gifford, Charles T. Shanner, Chicago, Ill., Thomas C. Angerstein, George W. Angerstein, Chicago, Ill., of counsel, for appellees.

Before MAJOR, Chief Judge, and KERNER and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff sued defendants to recover damages for the wrongful death of his son. Jurisdiction was based upon diversity of citizenship and the requisite amount in controversy. By his complaint, as amended, plaintiff asserted negligence on the part of defendants in that they carelessly and negligently caused and allowed their motor vehicle to forcibly and violently run into and strike plaintiff's intestate; caused the motor vehicle to be operated at a high and dangerous rate of speed; failed to give plaintiff's intestate the right of way; failed to give sufficient warning of the approach of the motor vehicle; failed to make proper use of the brakes; failed to stop the motor vehicle when danger to plaintiff's intestate became imminent; and that they were also guilty of wilful and wanton conduct.

Henry M. Nattens, 21 years of age, was struck by an automobile owned and driven by Huth, who was employed by The Grolier Society, Inc., while he was traversing on foot Chicago's "Midway" in the vicinity of the University of Chicago. There were no competent eye witnesses to the accident, but there is no dispute that Nattens was struck and that he died as a result of the accident. At the close of plaintiff's evidence and again at the close of all the evidence, defendants moved for a directed verdict. The motions were denied, and the cause was submitted to the jury with an interrogatory as to whether defendants were guilty of wilful and wanton misconduct. The jury answered "yes" to the interrogatory, found the defendants guilty, and assessed plaintiff's damages at $15,000. Thereafter defendants moved for judgment notwithstanding the verdict, and in the alternative, for a new trial. The court denied the motion for a new trial, but set aside the verdict and rendered a judgment for defendants and dismissed the complaint. To reverse this judgment, plaintiff appeals.

In this state of the record we must, of course, assume that all the evidence in favor of plaintiff and all inferences that may be legitimately drawn therefrom, are true, and that all the issues of fact were determined in favor of plaintiff. In such a situation, we are not concerned with the weight or credibility of the evidence, but only with the narrow question whether there is any evidence, together with all reasonable inferences to be drawn therefrom, which would justify submission of the case to the jury. Hughes v. Bandy, 404 Ill. 74, 87 N.E.2d 855; Lindroth v. Walgreen Co., 407 Ill. 121, 130, 94 N.E.2d 847; Wilkerson v. McCarthy, 336 U.S. 53, 57, 69 S. Ct. 413, 93 L.Ed. 497; and Janjanin v. Indiana Harbor Belt R. Co., 343 Ill.App. 491, 99 N.E.2d 578.

Defendants contend that plaintiff's intestate was guilty of contributory negligence as a matter of law, and that the court did not err in entering judgment in their favor because they were not guilty of wilful and wanton misconduct. We need not, however, discuss the question of Natten's contributory negligence unless the evidence fails to support the wilful and wanton charge of the complaint. In such case, the extent of the plaintiff's negligence is not

material. Walldren Express & Van Co. v. Krug, 291 Ill. 472, 477, 126 N.E. 97.

Wilful and wanton misconduct imports consciousness that an injury may probably result from the act done, and a reckless disregard for the safety of others and of the consequences, Brown v. Illinois Terminal Co., 319 Ill. 326, 331, 150 N.E. 242, 151 A.L.R. 1; Schneiderman v. Interstate Transit Lines, 394 Ill. 569, 583, 69 N.E.2d 293; Bartolucci v. Falleti, 382 Ill. 168, 174, 46 N.E.2d 980, or as the court, in Jeneary v. Chicago & I. Traction Co., 306 Ill. 392, 397, 138 N.E. 203, 206, said: "To constitute a wanton act the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, * * * such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness, such as charges the person whose duty it was to exercise care with the consequences of a willful injury."

The courts have frequently stated that a definition of what constitutes wilful and wanton conduct is fraught with grave difficulty, and that to lay down a rule of general application by which to determine what degree of negligence the law considers equivalent to a wilful and wanton act is almost impossible. And while the rule of law does not vary, the applicable law is dependent upon the facts and circumstances of each particular case. So, too, we must be mindful of the rule that "Whether the negligent conduct of a defendant, which has resulted in injury to another, amounted to wantonness, is a question of fact to be determined by the jury, if there is any evidence in the record fairly tending to show such a gross want of care as indicates a willful disregard of consequences or a willingness to inflict injury", Walldren Express & Van Co. v. Krug, 291 Ill. 472, 476, 126 N.E. 97, 98, or, as was said in Mower v. Williams, 402 Ill. 486, 490, 84 N.E.2d 435, 437, if "all its reasonable inferences, taken in the aspect most favorable to the contestant, may be said to be sufficient in law to support the cause of action."

In the following cases, Williams v. Kaplan, 242 Ill.App. 166; Fickerle v. Seekamp, 274 Ill.App. 310, and Schoenbacher v. Kadetsky, 290 Ill.App. 28, 7 N.E.2d 768, in each of which a recovery was sought for the death or injury to the plaintiff, it was held to be a question of fact to be determined by the jury as to whether or not the defendant was guilty of wilful and wanton conduct.

In the Williams case, 242 Ill.App. 166, Williams, a mail carrier, while crossing Washtenaw Street where it intersects Diversey Boulevard, in a residential district where the maximum speed fixed by statute for such an area was 15 miles per hour, was struck and fatally injured by a car driven by defendant at 30 or more miles per hour, and the court, 242 Ill.App. at page 180, said: "it was reasonable * * * to infer an intended disregard of a known duty necessary for the safety of others, and a want of care for the life of others, and shows such a conscious indifference to consequences as to justify and establish a charge of constructive or legal wilfulness." And in the Fickerle case, 274 Ill.App. 310, Bowles, plaintiff's intestate, was killed when he was struck by a delivery truck at about 7 o'clock in the evening, about 10 feet north of the north crosswalk at the intersection of Crawford Avenue and 13th Street, a business district. The driver was familiar with the intersection. There was nothing to obstruct his view as he approached the intersection, yet he drove his truck across the intersection at a speed of 35 miles an hour and failed to keep a lookout in the direction in which he was proceeding. The court, speaking through Mr. Justice Scanlan, 274 Ill.App. at page 322, said: "We are satisfied that the jury were justified in finding that Rodgers (the driver) was guilty of wilful and wanton conduct * * *."

In the Schoenbacher case, 290 Ill.App. 28, 7 N.E.2d 768, on a bright and clear day, plaintiff drove his automobile north on Vincennes Avenue, and as he reached a

point at about the south crosswalk of the intersection of 42nd Street, about halfway across the intersection, he was struck by defendant's automobile which was traveling at approximately 35 or 40 miles per hour. The trial court submitted to the jury an interrogatory as to whether the defendant had operated his automobile in a wilful and wanton manner. It was answered in the affirmative. On appeal it was contended that the trial court erred in allowing the case to go to the jury as to the wilful and wanton count. The reviewing court, after stating that the evidence was wholly insufficient to show an intent or purpose by defendant to injure plaintiff, 290 Ill.App. at page 34, 7 N.E.2d at page 770, said: "* * * we think that defendant's conduct evidenced such a gross want of care and regard for the rights of others as to justify the presumption of wantonness." See also Walldren Express & Van Co. v. Krug, 291 Ill. 472, 126 N.E. 97, and Janjanin v. Indiana Harbor Belt R. Co., 343 Ill.App. 491, 99 N.E.2d 578.

Henry M. Nattens died on May 1, 1948. The accident occurred at about 8 o'clock in the evening of March 31, 1948, in the south or eastbound drive of Midway Drive near University Avenue. The Midway has two one-way traffic drives. The south, or eastbound lane, is 40 feet wide, and is for eastbound traffic only. University Avenue ends at 60th Street which is separated from the south drive by a grass plot. At that time there was a plank walk across this grass plot, and the walk was continued across the drive by parallel white lines. There are staggered street lights about 120 feet apart along each side of the drive. From Woodlawn Avenue, a north and south street intersecting both drives, westward to Ellis Avenue, another north and south street which also intersects both drives, is a distance of some 1200 feet. There are stop signs for north and south traffic at Ellis Avenue, and the traffic at Woodlawn Avenue is regulated by stop-and-go lights.

Nattens was a post graduate student at the University which had an enrollment of 7,000 students, 40% of whom lived south of the Midway and used the boardwalks at Greenwood or University Avenue in attending classes. He was a man of normal and sober habits and was by custom careful in crossing streets on foot. On the day of the accident he dined with one Huntington, a fellow student, at a restaurant on 63rd Street. After dinner the two of them walked north to 61st Street, where Nattens left Huntington at 7:45 or 7:50 o'clock to attend an 8 o'clock seminar in the Social Science Building on the north side of the Midway 50 to 100 feet west of University Avenue. About this time one Werner, also a student, was approaching the Midway from the south, on an extension of Greenwood Avenue, about 375 feet to the west of University Avenue, and saw several cars being driven in an easterly direction. He heard no screeching of brakes, but he heard a thud to his right and, walking in that direction, saw Nattens lying along the north curb of the Midway.

The street lights were burning and furnished good light at the place of the accident. Huth claimed it was raining and that his windshield wipers were working, but there was evidence that the weather was dry. The speed limit was 25 miles per hour. The automobile, at the time it struck Nattens, was being driven in an easterly direction on the eastbound drive of the Midway across the intersection at University Avenue at a speed of 35 to 38 miles per hour. It was traveling within a foot or two of the north curb. There were no obstructions to Huth's view ahead, and he sounded no horn nor observed the crosswalk signs or speed signs, although he had resided in the neighborhood for 28 years. Nattens' body was found, straddling the north curb, about 5 feet west of the west line of the east crosswalk. No skid marks were found at the scene of the accident. The automobile was found 50 feet east of where the body was found.

■ We think, after considering the Illinois decisions, that there is in the record evidence, when taken with all its intendments most favorable to plaintiff, from which the jury might have found that Huth drove his automobile at a speed of 38 miles an hour, failed to keep a lookout and failed to apply his brakes, as is evident from the absence of any skid marks

and from the fact that his automobile was 50 feet east of the place where Nattens' body was found, all of which tended to support the charge that Huth was driving his automobile in reckless disregard of consequences and the safety of others, hence the case was one for the jury and the court should not have set aside the verdict.

Defendants next contend that there is no evidence to sustain the verdict against Grolier. The argument is that Huth paid his own expenses and received no money other than commissions on sales, and that plaintiff failed to prove that Huth was subject to the direction or control of Grolier.

■ The record discloses that Huth was employed by Grolier, and that when he was hired he was required to have an automobile. He was furnished a sample case which included advertising matter, sample books, and orders for him to fill out on behalf of Grolier, and he obtained through Grolier the names of prospects or leads, and was furnished credentials indicating that he represented Grolier in connection with the sale of its books. On the night of the accident he was returning to his home after having kept an appointment in connection with Grolier's business. In this situation, whether Huth was acting as an agent of Grolier or was an independent contractor is a question of fact, and a finding by a jury, if supported by the evidence, must be accepted by us. Katsinas v. Colgate-Palmolive-Peet Co., 299 Ill.App. 347, 20 N.E.2d 127, and cases cited therein. See also Flood v. Bitzer, 313 Ill.App. 359, 365, 40 N.E.2d 557. We think there was such evidence and the contention must be rejected.

■ Finally, defendants contend that the court erred in permitting counsel to inquire whether Huth had had a conversation with one Marovitz, an investigator, of 175 W. Jackson Boulevard. The record does not disclose what, if anything, is located at that number. Defendants, however, in their brief say that it is the address of the Insurance Exchange Building, and that one of the jurors in this case was employed by an insurance company with offices at that address. There is nothing here to show in what manner such an inquiry was or could be prejudicial to defendants. Moreover, the record does not disclose that defendants objected to the inquiry. Certainly, even though the question was improper, we would not be justified in holding this was reversible error.

The judgment notwithstanding the verdict is reversed and the case is remanded to the District Court with directions to enter judgment on the verdict in favor of plaintiff.